UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 24-62357-CIV-DIMITROULEAS/HUNT

STARMARK FINANCIAL LLC,

        Plaintiff,

vs.

LUTHER APPLIANCE & FURNITURE
SALES ACQUISITION LLC,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S EXPEDITED EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND APPOINTMENT OF SPECIAL MASTER

This matter is before this Court on Plaintiff's Expedited *Ex Parte* Motion for a Temporary Restraining Order, Preliminary Injunction, and Appointment of Special Master ("Motion"). ECF No. 4. The Honorable William P. Dimitrouleas referred this Motion to the undersigned United States Magistrate Judge. ECF No. 5; *see also* 28 U.S.C. § 636; S.D. Fla. L.R., Mag. R. 1. Upon thorough and careful review of the Motion, the applicable law, argument of counsel at a December 18, 2024 *ex parte* hearing and being otherwise fully advised in the premises, the undersigned RECOMMENDS Plaintiff's motion be GRANTED IN PART.

## BACKGROUND

Plaintiff, Starmark Financial LLC ("Starmark"), moves *ex parte* pursuant to Fed. R. Civ. P. 65, for entry of a temporary restraining order (1) freezing Defendant's assets and (2) restraining Defendant from transacting with, transferring, or using funds from accounts receivable owned by Starmark. Starmark also moves for a preliminary injunction seeking

similar relief, in addition to the appointment of a Special Master to oversee Defendant Luther Appliance's operations and assets.

According to Plaintiff's filings and evidence presented at the hearing, Plaintiff in 2022 purchased roughly 90 percent of Defendant's accounts receivable, with Defendant continuing to service the accounts.  Plaintiff alleges that the relationship began to fall apart after Defendant's Chief Executive Officer committed suicide following allegations of fraud. Defendant was then unable to continue servicing the accounts, according to Plaintiff.  Plaintiff terminated the servicing agreement with Defendant and alleges that Defendant now refuses to turn over funds and account data. Plaintiff alleges that Defendant claimed it wanted to use the funds and accounts to settle with Defendant's creditors.  Plaintiff alleges that payments are still being made by clients but that it is unknown where the money is going, that the clients are not being properly credited with the payments, and that an interim manager stated that he was unable to properly manage the business as it wound down.

## **LEGAL STANDARD**

A temporary restraining order is used primarily for maintaining the status quo of the parties. *See*, e.g., *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983).  To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  "A TRO is an extraordinary remedy, and is not warranted unless the [movant] has clearly met the

four required elements." *Mandala v. Tire Stickers LLC*, No. 618CV2110ORL37TBS, 2019 WL 1468530, at *1 (M.D. Fla. Feb. 12, 2019) (quoting *HSBC Bank USA, N.A. v. Cambria at Polos S. Condo. Ass'n Inc.*, No. 6:14-cv-1149-Orl-31GJK, 2014 WL 3540766, at *1 (M.D. Fla. July 17, 2014)).  "Notably, '[a] showing of irreparable injury is "the sine qua non of injunctive relief."'" *Blaise v. Wells Fargo & Co.*, No. 22-20303-CIV-MARTINEZ-BECERRA, 2022 WL 293259, at *2 (S.D. Fla. Feb. 1, 2022) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).  Such an injury "must be neither remote nor speculative, but actual and imminent." *Id.* (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007)).

Additionally, the requirements for granting an *ex parte* temporary restraining order, such as is at issue here, go beyond the usual requirements for injunctive relief, allowing a district court to grant such a request

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Martinez Serna v. Bailey Farms S., LLC*, 2:21-CV-237-SPC-MRM, 2021 WL 1060176, at *1 (M.D. Fla. Mar. 19, 2021) (quoting Fed. R. Civ. P. 65(b)(1)).  These requirements acknowledge "that informal notice and a hastily arranged hearing are to be preferred to no notice or hearing at all." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974).

Finally, an asset freeze, such as is requested here, is inappropriate if the purpose is to satisfy a potential judgment for money damages—a legal remedy. *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994). However, an asset freeze is appropriate

to preserve assets for an equitable remedy. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995).

## DISCUSSION

The facts in Plaintiff's verified complaint and affidavit in support of its Motion, along with testimony at the hearing from Plaintiff's Chief Financial Officer, Kenneth Annarelli, support the following conclusions of law:

1. Starmark has a strong likelihood of prevailing at trial on its breach of contract claim. Starmark has demonstrated the existence of a written contract, material breaches by Luther, and damages suffered as a result. *See Wistar v. Raymond James Fin. Services*, Inc., 365 F. Supp. 3d 1266, 1269 (S.D. Fla. 2018). Specifically, Luther likely breached by failing to remit to Starmark the balance of the subject accounts, using Starmark funds to satisfy Luther's unrelated debts with creditors, using Starmark's accounts as collateral, and failing to service the subject accounts in compliance with applicable state and federal regulations.

2. As relief to its breach of contract claim, Starmark seeks restitution—an equitable remedy. *Commodity Futures Trading Com'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1345 (11th Cir. 2008). Therefore, it is appropriate to freeze Luther's assets to preserve Starmark's potential recovery under its theory of restitution. *Levi Strauss*, 51 F.3d at 987.

3. Starmark has demonstrated an imminent threat of irreparable harm that Luther will spend or transfer these assets. District courts routinely enter asset freezes to protect a plaintiff's potential recovery of equitable remedies, recognizing that the risk of plaintiff being unable to recover on its equitable remedies constitutes "threat of irreparable injury." *See, e.g., Levi Strauss*, 51 F.3d at 987 (affirming freeze of "assets which could have been

4

used to satisfy an equitable award of profits"); *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) ("asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement"); *Gucci Am., Inc. v. Annytrade.org*, No. 13-61721-CIV-COHN, 2013 WL 4554452, at *1 (S.D. Fla. Aug. 28, 2013) (entering asset freeze where plaintiff sought profits as equitable remedy and "Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained"); *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1364 (S.D. Fla. 2006) (denying modification of "temporary freeze of all of Lauer's assets for ten days in order to maintain the status quo"). Such a threat of irreparable injury exists here.

4. The threat of injury to Starmark outweighs any potential harm to Luther. The requested asset freeze and restraining order would merely maintain the status quo. *See Granny Goose*, 415 U.S. at 439; *Lauer*, 445 F. Supp. 2d at 1364.

5. There are credible allegations that Luther has caused and will cause substantial, ongoing harm to consumers while failing to take remedial action. Therefore, the requested freeze will serve the public interest.

As all of the requirements to issue a temporary restraining order have been met, the undersigned finds Plaintiff's *ex parte* motion should be granted as to the requested TRO.

For the foregoing reasons, it hereby RECOMMENDED that Plaintiff's Motion be GRANTED as follows:

(1) Pursuant to Fed. R. Civ. P. 65(a), the entirety of Defendant's assets without exception should be immediately frozen. Upon receipt of the Court's Order on this Report and Recommendation, Defendant and its related companies and affiliates should

immediately freeze all its assets.

(2) Pursuant to Fed. R. Civ. P. 65(a), Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, should be temporarily restrained from conducting any transactions, sales, or transfers relating to Starmark's accounts, and from using the subject accounts, funds, or financial data in any way.

(3) This Temporary Restraining Order should remain in effect until the date of the hearing on Plaintiff's request for a preliminary injunction, or until such further dates as set by the Court or stipulated to by the parties.

(4) The Court should reserve ruling on Plaintiff's request for the appointment of a Special Master until all parties have the opportunity to be heard on the matter.

(5) A hearing is hereby set for **January 2, 2025, at 2 p.m**., in Courtroom 310B of the U.S. Federal Building and Courthouse, 299 East Broward Blvd, Fort Lauderdale, Florida. At the hearing, the Court will hear argument on Plaintiff's request for preliminary injunction and appointment of a special master as set forth in the Motion.

(6) By Friday, December 27, 2024, Defendant shall file a Response to Plaintiff's Motion. Plaintiff shall file a Reply by Monday, December 30, 2024. These dates may be revised upon stipulation by the Parties and approval of the Court.

(7) By Tuesday, December 31, 2024, the Parties shall file Witness Lists identifying any witnesses that the Parties expect to call at the preliminary injunction hearing. At the option of the parties, direct testimony may be submitted in the form of written affidavits; however, all affiants will be subject to live cross examination at the hearing.

(8) Defendant is hereby notified that if it does not timely respond to Plaintiff's

Motion or does not appear at the scheduled preliminary injunction hearing, the Court may enter a preliminary injunction against Defendant by default.

Plaintiff shall serve its Motion and this Report and Recommendation on Defendant immediately. Within one (1) day after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response shall be filed within one (1) day of the objections. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); see Thomas v. Arn, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 18th day of December 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable William P. Dimitrouleas
All counsel of record